UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11107-RGS

THE TALBOTS, INC.

v.

AIG SPECIALTY INSURANCE COMPANY

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

September 29, 2017

STEARNS, D.J.

This insurance dispute arises from a California state court lawsuit brought against The Talbots, Inc. (Talbots) by two former Talbots employees, individually and on behalf of a proposed class of employees, alleging various violations of the California Labor Code (the *Lopez Action*).[1]  Talbots sought defense costs and indemnification for the *Lopez Action* from its insurer, defendant AIG Specialty Insurance Company (AIG), which in turn denied coverage under the terms of Talbots' policy.  Talbots responded by bringing suit in this court, alleging breach of contract (Count I) and breach of the

---

[1] That civil action, currently pending in Alameda County Superior Court in California, is *Ricardo Lopez, et al v. The Talbots, Inc.,* Case No. RG15785672.

implied covenant of good faith and fair dealing (Count II).[2]   AIG now moves to dismiss the Complaint, arguing that the claims brought against Talbots in the *Lopez Action* fall within various exclusions to the AIG Policy.  The court agrees and will grant the motion.

### BACKGROUND[3]

Talbots is a specialty retailer and marketer of women's apparel, accessories, and shoes.  In October of 2014, Talbots' parent company, Tailor Holdings, LLC (Tailor), purchased a Management Liability for Private Companies policy from AIG (the Policy).  The Policy, which applied to Tailor's subsidiaries (among them Talbots[4]), included three separate

---

[2] Count III of the Complaint seeks a Declaratory Judgment in Talbots' favor.

[3] In addition to the allegations on the face of the Complaint, the court may consider the text of the AIG Policy itself and the First Amended Complaint in the *Lopez Action* (Lopez Complaint), as copies of these documents were attached to Talbots' Complaint and there is no dispute as to their authenticity.  *See Ironshore Specialty Ins. Co. v. United* States, --- F.3d ---, 2017 WL 4082071 at *2 (1st Cir. Sept. 15, 2017) ("[W]hen 'a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss.") (internal citation omitted); *see also Pollack v. Fed. Ins. Co.*, 2013 WL 6152335, at *1, n.2 (D. Mass. Nov. 21, 2013) ("On motions to dismiss, courts can properly take into account documents attached to or incorporated into the complaint.").

[4] AIG concedes, for purposes of this motion, that Talbots is an insured under the policy "as a Subsidiary of Tailor Holdings, LLC." Def.'s Mem., Dkt # 9 at 3.

coverage sections: 1) the Directors and Officers Liability Coverage Section (the D&O Coverage Section); 2) the Employment Practices Liability Coverage Section (the EPL Coverage Section); and 3) the Fiduciary Liability Coverage Section.  The parties agree that only the first two coverage sections are implicated in the current dispute.  The Policy, in effect from October 1, 2014, to October 1, 2015, was issued in Massachusetts.[5]

A. Policy Exclusions

Both the D&O Coverage Section and the EPL Coverage Section require AIG to advance defense costs and pay losses incurred by an insured arising from claims against the insured, subject to the exclusions and exceptions that are at issue in this case.  Exclusion 4(q) of the D&O Coverage Section provides that AIG is not liable for "Loss in connection with any Claim made against an Insured . . . alleging, arising out of, based upon, or attributable to the employment of any individual or any employment practice, including, but not limited to, wrongful dismissal, discharge or termination, discrimination, retaliation or other employment-related claim."  This provision sweeps broadly: any claim against the insured "arising out of,

---

[5] Talbots, a Delaware corporation, has its principal place of business in Massachusetts.  AIG is an Illinois corporation with its principal place of business in New York.

based upon, or attributable to" the insured's employment practices is excluded from coverage under the relevant section.

Although categorically excluded from the D&O Coverage Section, loss and claims against the insured stemming from employment-related practices are covered under the EPL Coverage Section.  Section 2(b) covers only enumerated species of actual or alleged Employment Practices Violations:

> (i)      wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;
>
> (ii)      harassment (including, but not limited to, sexual harassment whether "quid pro quo", hostile work environment or other harassment in the workplace);
>
> (iii)      discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);
>
> (iv)      retaliation (including, but not limited to, lockouts);
>
> (v)      employment-related misrepresentations to an Employee of the Company or applicant for employment with the Company or an Outside Entity;
>
> (vi)      employment-related libel, slander, humiliation, defamation or invasion of privacy;
>
> (vii)      wrongful failure to employ or promote;
>
> (viii)      wrongful deprivation of career opportunity with the Company, wrongful demotion or negligent Employee evaluation, including, but not limited to, the giving of

> negative or defamatory statements in connection with an employee reference;

(ix)    wrongful discipline;

(x)    failure to grant tenure; or

(xi)    with respect to any of the foregoing items (i) through (x) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights[.]

Coverage under the EPL Coverage Section is limited, however, by Endorsement No. 1, which provides that AIG shall not be liable for any payment for Loss in connection with any Claim brought against one of its insureds:

> for violation(s) of any of the responsibilities, obligations or duties imposed by . . . the Fair Labor Standards Act [FLSA] . . . any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law.

> It is acknowledged that Claims for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law," as such quoted language is used in the immediately-preceding paragraph, include, without limitation, any and all Claims which in whole or in part allege, arise out of are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

> (1) the refusal, failure or inability of any Insureds to pay wages or overtime pay (or amounts representing such wages or

overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

(2) improper deductions from pay taken by any Insureds) from any Employees) or purported Employee(s); or

(3) failure to provide or enforce legally required meal or rest break periods[.]

In short, the EPL Section covers the listed types of employment claims in Section 2(b), excluding the labor claims set out in Endorsement 1 – including, most relevant to this case, state law analogs to the FLSA.

B. The *Lopez Action*

On September 16, 2015 – within the policy period – two former Talbots employees filed a putative class action in California Superior Court against Talbots, alleging nine violations of the California Labor Code. The specific counts alleged in the complaint, and their corresponding provisions of the California Labor Code, were as follows: 1) Unpaid Overtime (§§ 510 and 1198); 2) Unpaid Meal Period Premiums (§§ 226.7 and 512(a)); 3) Unpaid Rest Period Premiums (§ 226.7); 4) Unpaid Minimum Wages (§§ 1194, 1197, and 1197.1); 5) Final Wages Not Timely Paid (§§ 201 and 202); 6) Wages Not Timely Paid During Employment (§ 204); 7) Non-Compliant Wage Statements (§ 226(a)); 8) Failure to Keep Requisite Payroll Records (§ 1174(d)); and 9) Unreimbursed Business Expenses (§§ 2800 and 2802). In

6

Count 10, the *Lopez* plaintiffs also alleged that Talbots engaged in unfair business practices in violation of Section 17200 of the California Business and Professions Code because the alleged employment law violations allowed Talbots to "unlawfully gain[] an unfair advantage over other businesses." *Lopez* Compl. ¶ 116.  In broad terms, the *Lopez Action* alleged that Talbots "engaged in a uniform policy and systematic scheme of wage abuse against their hourly-paid or non-exempt employees within the State of California," a scheme that involved "*inter alia*, failing to pay them for all hours worked, missed meal periods and rest breaks in violation of California law." *Id.* ¶ 27.

After Talbots notified AIG of the lawsuit, AIG denied coverage by letter dated September 30, 2015.  According to the Complaint, AIG took the position that the *Lopez Action* did not constitute an employment claim as defined by the EPL Coverage Section. Talbots asked AIG to reconsider its position and to examine coverage under the D&O Section.  AIG again denied coverage, stating that coverage under the D&O Section was unavailable because the *Lopez Action* triggered that section's exclusion for claims "alleging, arising out of, based upon, or attributable to" the employment practices of the insured.  This lawsuit followed.

## DISCUSSION

AIG moves to dismiss the Complaint for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  In order to survive such a motion, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

The parties agree that Massachusetts law governs the dispute.  "Under Massachusetts law, insurance-contract interpretations pose legal issues for resolution by the court, and, absent ambiguity, insurance contracts are to be enforced in accordance with their plain language." *Utica Mut. Ins. Co. v. Weathermark Investments, Inc.*, 292 F.3d 77, 80 (1st Cir. 2002); *see also Hakim v. Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 281 (1997) ("We read the policy as written and 'are not free to revise it or change the order of the words.'") (quoting *Continental Cas. Co. v. Gilbrane Bldg. Co.*, 391 Mass. 143, 147 (1984)).   "When the terms of an exclusion . . . are plain and free from ambiguity the court does not construe them strictly against the insurer." *Strange v. Genesis Ins. Co.*, 536 F. Supp. 2d 71, 74 (D. Mass. 2008)   As the First Circuit has observed, "[a] policy provision will not be deemed ambiguous simply because the parties quibble over its meaning. Rather, a policy provision is ambiguous only if it is susceptible of more than

8

one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." *Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 66 (1st Cir. 2012).

Unsurprisingly, Talbots focuses primarily on Counts 5-10 of the *Lopez Action*, essentially conceding that the wage and hour claims of Counts 1-4 trigger the Policy's exclusionary clauses. *See* Pl.'s Opp'n, Dkt # 18 at 3-4 (protesting that AIG "has attempted to extend the exclusionary language in the Policy to deny coverage for *all* claims in the Underlying Lawsuit, despite the fact that the Underlying lawsuit brings separate and distinct claims against Talbots that either do not have counterparts in the FLSA or are not employment claims.")  The court has little difficulty concluding that claims for unpaid overtime (Count 1), unpaid meal period premiums (Count 2), unpaid rest period premiums (Count 3), and unpaid minimum wages (Count 4) are textbook examples of claims "arising out of, based upon, or attributable to the employment" of individuals, D&O Exclusion 4(q), and also allege "the refusal, failure or inability of any Insureds to pay wages or overtime pay"  and the "failure to provide or enforce legally required meal or rest break periods," as spelled out in Endorsement 1.

There is also no traction to Talbots' assertion that "there is clearly coverage for at least Counts 5 through 10 of the Underlying Lawsuit." Pl.'s Opp'n at 4. Counts 5-9 allege violations of state labor regulations that govern how employers must disburse wages, maintain records relating to employees, and reimburse employees for business expenses. Talbots cites no authority or persuasive rationale for the proposition that these claims do not also "aris[e] out of," or are "attributable to," Talbots' "employment of any individual or any employment practice" under the terms of Section 4(q) of the D&O Coverage Section.

Nor are the claims advanced in these counts included in the definition of Employment Practice Violations in Section 2(b) of the EPL Coverage Section. The court therefore finds that these claims, too, are not covered by the Policy.

In a final attempt at a salvage operation[6], Talbots argues that Count 10 of the *Lopez Action* (alleging violations of the California Business and

---

[6] Talbots also contends that AIG has taken inconsistent positions, suggesting that the *Lopez Action* does not meet the definition of Employment Practices Violation under the EPL Coverage Section, but does qualify as an employment practice for purposes of Exclusion 4(q) of the D&O Coverage Section. This argument is completely beside the point. The D&O Coverage Section contains a broad exclusion for any claims arising out of employment practices, presumably *because* there is a separate section of the policy (the EPL Section) which deals with employment practices violations and defines with specificity what forms of violations are covered under the policy.

Professions Code) cannot be considered an employment-related claim under the terms of the policy because the *Lopez* plaintiffs brought this Count as "a private attorney general to enforce statutory unfair practices on behalf of the general public and competitors and seek to recover statutory penalties and attorney fees for conferring a public benefit." Pl.'s Opp'n, Dkt #18 at 9. However, Talbots makes no compelling argument for why this distinction matters when interpreting the scope of the exclusionary clauses in the insurance policy at issue.  Furthermore, the unfair business practices claim at issue in the *Lopez Action* alleges that Talbots gained an unfair advantage over other businesses solely because of the employment-related violations enumerated in Counts 1-9.  In other words, Count 10 is merely an alternative statutory theory of recovery for the same alleged injuries to Talbots' employees – injuries which clearly arose out of the company's employment and labor practices.

Ultimately, this is not a case where the allegations in the California Superior Court lawsuit "are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms."  *Ruggerio*

---

Reading the two provisions as complementary is consistent with the court's duty to "interpret the words of the standard policy in light of their plain meaning, . . . giving full effect to the document as a whole," *Golchin v. Liberty Mut. Ins. Co.*, 466 Mass. 156, 159-160 (2013).

*Ambulance Serv., Inc. v. Nat'l Grange Mut. Ins. Co.*, 430 Mass. 794, 796 (2000) (quoting *Liberty Mut. Ins. Co. v. SCA Servs., Inc.*, 412 Mass. 330, 332 (1992)).  To the contrary, the court finds that all of the claims made against Talbots in the *Lopez Action* are either directly tied to, or a natural outgrowth of, the company's employment and labor practices.   Because Talbots purchased an insurance policy that specifically excluded coverage for such claims, AIG did not breach the duty to defend or indemnify.

## ORDER

For the foregoing reasons, AIG's motion to dismiss is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE